UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PABLO PEDRAZA, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:17-cv-00481-WTL-DLP |
| WARDEN, | ) ) ) |
| Respondent. | ) |

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Pablo Pedraza for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. ISP 17-07-0358. On July 9, 2017, two inmates were assaulted on the recreation yard at Indiana State Prison. They received serious injuries that required treatment at outside hospitals. Mr. Pedraza was charged with participating in the attacks. For the reasons explained in this Entry, Mr. Pedraza's habeas petition must be **denied**.

### A. Overview

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

The conduct giving rise to the discipline occurred while Mr. Pedraza was housed at the Indiana State Prison. On July 19, 2017, Mr. Pedraza was charged in case ISP 17- 07-0358 with offense A-102/111, conspiracy/attempt/aiding an assault/battery with a weapon. The conduct report states:

> On 7/9/2017, at approximately 4:30pm offender Pablo Pedraza #178344 housed in BCH cell 534 went to recreation with his housing unit BCH and units F-dorm and ICH and conspired and or aided in the assault of offender Washington #978703 also from BCH. Washington sustained severe bodily injuries from the assault that required outside medical attention from a local hospital. During the assault on Washington, offender Hawkins #956724 from BCH also sustained severe bodily injuries that required outside medical attention from another hospital to treat his specific type of injuries.
>
> An investigation was launched. During this altercation at recreation in the rec yard, Pedraza was seen kicking Washington while Washington lay on the ground by the basketball court. Pedraza was seen with a weapon (knife) in his hand as he attempted to run away from staff as the area was being secured. Pedraza was seen discarding the weapon and the weapon was found in the outside bathroom where Pedraza was seen discarding it. Pedraza was also seen using the horseshoes as weapons.
>
> Pedraza participated in STG activity with three (3) other Latin King members for this offense.

Dkt. No. 8-1. After the assault, Mr. Pedraza was transferred to Wabash Valley, where the disciplinary process continued.

On August 4, 2017, Mr. Pedraza was notified of the charge of conspiracy/attempt/aiding in an assault/battery with a weapon and served with a copy of the conduct report and screening report. Mr. Pedraza was advised of his rights, pleaded not guilty, and declined the option to have a lay advocate appointed. Mr. Pedraza requested witness statements from inmates Mr. Mueller and Mr. Washington, and he also requested a video review. Dkt. No. 8-2.

Mr. Pedraza's disciplinary hearing was postponed once because Wabash Valley was waiting to hear back from the State Prison concerning the video request. On August 16, 2017, the screening officer received an email from personnel at the State Prison confirming that no video was available because there were no video cameras in the area of the yard where the assault occurred. Dkt. No. 8-4.

The screening officer obtained statements from Mr. Mueller and Mr. Washington. Mr. Mueller stated:

> Pablo Pedraza had nothing to do with the incident that took place on July 9, 2017. It was a simple case of being in the wrong place at the right time. If you want to be honest he's a victim who got assault because he was in the wrong place at the wrong time. Furthermore the conduct says the incident occurred at 4:30pm on the rec yard but the facility was on lockdown at 2:00pm so that isn't even possible, for him to be in the rec yard at that time.

Dkt. No. 8-6. Mr. Washington wrote, "I didn't assault him? I know nothing! I seen nothing!" Dkt. No. 8-7.

On August 21, 2017, the hearing officer held a hearing in case ISP 17-07-0358. Mr. Pedraza pleaded not guilty and made the following statement: "Not guilty—they didn't see me with a knife and they didn't find me [with] a knife. The facility was on lock down at 2pm—we went to 11 to 130pm—they wrote me up because I refused to cooperate with IA." Dkt. No. 8-5. After considering the conduct report, Mr. Pedraza's statement, and the witness statements, the hearing officer found Mr. Pedraza guilty as charged. Mr. Pedraza's sanctions included a 90-day loss of earned good-time credit and a one-step demotion to credit class II. *Id*.

Mr. Pedraza appealed to the facility head and the Indiana Department of Correction final reviewing authority. Both appeals were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

C. **Analysis**

Mr. Pedraza asserts that his due process rights were violated because the hearing officer did not try to verify the veracity of Mr. Pedraza's witness statements with the Indiana State Prison. Dkt. 1. He also contends that his right to an impartial decision maker was violated because of the hearing officer's failure to verify his defense. Dkt. No. 16.

1. Sufficiency of the Evidence

Mr. Pedraza's first claim is essentially a challenge to the sufficiency of the evidence. Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (citation and quotation marks omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBridge*, 188 F.3d 784, 786 (7th Cir. 1999).

Here, the conduct report provides some evidence that Mr. Pedraza was guilty of the charged violation. The conduct report states that Mr. Pedraza was seen kicking one of the victims, using horseshoes as weapons, and discarding a knife as he ran from the area. Mr. Pedraza presented evidence that disputed this version of events. It was within the hearing officer's discretion to weigh the credibility and veracity of evidence presented on behalf of the facility and by Mr. Pedraza, and to find him guilty of the charged offense.

2. Denial of Evidence

Mr. Pedraza's claim could be construed as a denial of evidence to the extent that he argued at the hearing that the conduct report could not be true because it stated that the events occurred at a time when the Indiana State Prison was on lock-down, and requested that the hearing officer confirm his assertion with the Indiana State Prison.

The "first question" when evaluating a petitioner's claim that he was denied requested evidence is whether a "timely request" was made for that evidence. *Ashby v. Davis*, 82 Fed. Appx. 467, 470 (7th Cir. 2003). Contrary to the respondent's argument, a request is timely if it is made "either before or at the hearing." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). Nevertheless, that argument does not help Mr. Pedraza because the error was harmless. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). The conduct report incorrectly states that the charged conduct occurred later than it actually did. If Mr. Pedraza had been given evidence that the Indiana State Prison was on lock-down at 2:00 pm on the day in question, it would not have changed the outcome of his disciplinary hearing. He does not dispute that the victims were seriously injured and required treatment at outside hospitals. There is little doubt that Indiana State Prison instituted a lock-down after the events recounted in the conduct report. The misreported time of those events on the conduct report does not invalidate Mr. Pedraza's conviction. He is not entitled to relief on this ground.

    3. <u>Denial of an Impartial Decision Maker</u>

In his traverse, Mr. Pedraza characterizes his claim as the denial of an impartial decision maker. The respondent countered in his reply that Mr. Pedraza did not exhaust available administrative remedies and is therefore barred from raising this claim. Setting aside the exhaustion issue, Mr. Pedraza is not entitled to relief on this ground.

A prisoner in a disciplinary action has the right to be heard before an impartial decision

maker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decision maker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 Fed. Appx. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667. Mr. Pedraza has not claimed that the hearing officer was involved in the factual events underlying his charge or in its investigation. Instead, he believes that only a biased decision maker could have rejected his defense. This claim fails because, as discussed above, there is some evidence that he was guilty of the charged conduct and it is within the decision maker's discretion to weigh competing evidence.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Pedraza to the relief he seeks. Accordingly, Mr. Pedraza's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/18/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

PABLO PEDRAZA
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Aaron T. Craft
INDIANA ATTORNEY GENERAL
aaron.craft@atg.in.gov